UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY ANDERSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CONTRA COSTA COUNTY, et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-03647-TSH<br><br>**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 55, 57, 61 |

## I.   INTRODUCTION

Pending before the Court is a Motion for Summary Judgment, filed by Defendants Contra Costa County and Amanda Sears (collectively, "Defendants"). ECF No. 55. The Court finds this matter suitable for disposition without oral argument and **VACATES** the May 19, 2022 hearing. *See* Civ. L.R. 7-1(b). Having considered the arguments made and the papers submitted in support thereof, the Court **GRANTS** Defendants' Motion for Summary Judgment for the following reasons.[1]

## II.   BACKGROUND[2]

**A.   Factual Background**

On June 7, 2019, the Honorable Judge Nancy Stark of the County Costa County Superior Court signed a search warrant for Plaintiff Nancy Anderson's residence and an arrest warrant for Joseaphus Goodwin. Plaint. State. of Undisputed Facts ("P's SUF") ¶ 1, ECF No. 60.[3] The search

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 3, 28.

[2] The following facts are undisputed unless otherwise noted.

[3] This document contains Defendants' original statement of undisputed facts, ECF No. 56, and

warrant was prepared and signed by Defendant Detective Amanda Sears. P's SUR. ¶ 2. The search warrant[4] authorized the search of Plaintiff's residence for the following:

> **THE VEHICLE(S)** described as:
> 1.) Black 2011 Jaguar California License Plate 8PQC847. Registered to Joseaphus Goodwin III.
> 2.) Silver Jeep California License Plate 8DIY614, a Hertz rental car rented to Joseaphus Goodwin.
> . . . .
> **THE PERSON(S)** of:
> **Joseaphus Goodwin III**
>
> FOR THE FOLLOWING **PROPERTY or THINGS** listed below:
> 1) Firearms, ammunition, and gun magazines;
> 2) Gang indicia . . .
> 3) Cellular phones and other communication devices identified as belonging to Joseaphus Goodwin . . .
> 4) Officers are permitted to inspect, photograph, and document the above listed subject tattoos . . .
> 5) Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant including lease agreements, deeds of trust, mortgage records, rent receipts, utility bills, personal correspondence, telephone bills, keys, and photographs;
> 6) Any safe or locked container found on the property that cannot be easily opened;
> 7) A men's diamond Miami Cuban bracelet.

ECF No. 57-1 (Search Warrant) at 3-4.[5]

---

Plaintiff's responses.

[4] Defendants request the Court take judicial notice of the search warrant, which contains a supporting affidavit by Defendant Sears. ECF No. 57. Plaintiff did not file an opposition to Defendants' request. The Court **GRANTS** Defendants' Request for Judicial Notice. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Kyles v. Baker*, 72 F. Supp. 3d 1021, 1030 n.1 (N.D. Cal. Oct. 31, 2014) ("Defendants request judicial notice of the warrant for Kyles's arrest . . . Because these court documents are appropriate subjects of judicial notice under Federal Rule of Evidence 201(b)(2), the request is GRANTED."); *cf. Call v. Badgley*, 254 F. Supp. 3d 1051, 1061 n.5 (N.D. Cal. May 19, 2017) ("Because neither party objects to the court taking judicial notice of the existence of these documents, the Court GRANTS the requests for judicial notice. See Fed. R. Evid. 201(b).")

[5] Portions of the search warrant are sealed. P's SUR ¶ 3. Plaintiff's counsel, Stanley Craig Goff, Jr., did not seek to unseal the search warrant. ECF No. 55-1 (Mauck Decl.) at ¶ 8. Plaintiff's counsel failed to conduct written discovery and failed to produce documents with Plaintiff's initial disclosures or Defendants' request for production. *Id*. at ¶¶ 6-8.

     Plaintiff had known Joseaphus Goodwin for twenty years prior to the search. P's SUR ¶ 8. Goodwin was a convicted felon, known member of a gang, and active suspect of a pistol whipping and robbery. P's SUR ¶¶ 5-6. Given Goodwin's history of firearm possession, gang membership, and criminal investigation, Defendant Sears had the search warrant effected at night to mitigate the danger to officers and the public. P's SUR ¶ 7. Based on Defendant Sears's training and experience, "it [was] common for subjects involved in criminal activity to have multiple 'cold' locations . . . to conceal their location" and "for subjects to reside at places other than their addresses of record . . . to hide and/or conceal evidence of the crime from law enforcement." ECF No. 57-1 (Search Warrant) at 10. Although Goodwin was incarcerated at the time of the search, Defendant Sears was concerned that other co-defendants could have been at Plaintiff's residence. P's SUR ¶ 13.

     On June 11, 2019, at approximately 5:00 a.m., Defendant Sears and a group of ten to twenty officers arrived at Plaintiff's residence to execute the search warrant. P's SUR ¶ 12. Upon entering Plaintiff's residence, Detective Sears saw Plaintiff and lowered her gun towards the ground. P's SUR ¶ 19. Plaintiff was then escorted to the living room. ECF No. 55-2, Exh. A (Anderson Depo.) at 26:6-9, 28:7-10; ECF No. 55-3, Exh. B (Sears Depo.) at 23:14-16; ECF No. 62-2, Exh. A (Anderson Depo.) at 31: 9-11. Plaintiff was not free to move around her residence as officers executed the search warrant. ECF No. 55-2, Exh. A (Anderson Depo.) at 28:7-10; ECF No. 55-3, Exh. B (Sears Depo.) at 23:21-24. Plaintiff was detained without handcuffs and no firearm was pointed at Plaintiff during the search. P's SUR ¶¶ 22, 26; ECF No. 55-2, Exh. A (Anderson Depo.) at 32:19-24. The search ended at 7:45 a.m. P's SUR ¶ 26.

     During the search, Plaintiff was overseen by and spoke only with Detective Sears and Probation Officer Amy Decker. P's SUR ¶ 24. Defendant Sears asked Plaintiff questions about Plaintiff's son, Marrico Williams, because Defendant Sears had a case involving Marrico Williams. ECF No. 55-2, Exh. A (Anderson Depo.) at 31:15-22. After speaking with Defendant Sears, Plaintiff spoke with Officer Decker. ECF No. 55-3, Exh. B (Sears Depo.) at 24:2-6.

3

1    Officer Decker asked Plaintiff where Plaintiff graduated from, where Marrico Williams graduated

2    from, how long Plaintiff knew Goodwin, how many times a week Goodwin came to Plaintiff's

3    home, how long Plaintiff resided in her home, where Plaintiff works, and what time Plaintiff had

4    to go to work. ECF No. 62-2, Exh. A (Anderson Depo.) at 35:8-15; 39:9-15.

5        At the time of the search, Plaintiff was wearing short pajamas or a "short like gown" and

6    officers denied Plaintiff's request to "get something" to cover up. ECF No. 55-2, Exh. A

7    (Anderson Depo.) at 32:19-24. The officers also denied Plaintiff's requests to get her phone. ECF

8    No. 55-2, Exh. A (Anderson Depo.) at 26:7-9; 32:21-24. However, at some point during the

9    search, Plaintiff was told to look for her phone and Plaintiff was able to call her boss. ECF No.

10   55-2, Exh. A (Anderson Depo.) at 38:5-7, 12-13, 15-16. Plaintiff left for work "right after" the

11   call. ECF No. 55-2, Exh. A (Anderson Depo.) at 38:6-7.

12   **B.    Procedural Background**

13       On June 1, 2020, Anderson filed the instant action. ECF No. 1. On January 20, 2021,

14   Anderson filed an amended complaint against Defendants, alleging four claims under 42 U.S.C. §

15   1983 and the Fourth Amendment: 1) judicial deception leading to unlawful entry, 2) excessive

16   force, 3) unlawful detention, and 4) judicial deception leading to illegal search. ECF No. 24 at ¶¶

17   20-44.

18       On March 15, 2022, Defendants filed a Motion for Summary Judgment. ECF No. 55. On

19   March 30, 2022, Plaintiff filed an Opposition.[6] ECF No. 59. Plaintiff also filed an affidavit in

20   support of her Opposition ("Opposition Affidavit"). ECF No. 59-1. On April 5, 2022, Defendants

21   filed a Reply. ECF No. 62.

22       On April 11, 2022, the Court issued an Order requiring Plaintiff to submit supplemental

---

[6] Plaintiff's counsel filed an Ex Parte Application to File Late Opposition to Defendants' Motion for Summary Judgment. ECF No. 61. The Court construes the application as a motion to enlarge time, which a party may oppose. *See* N.D. Cal. Civ. L. R. 6-3(b).
    Plaintiff's counsel argues he filed a late opposition because he was "preparing for and conducting two federal trials within the last four weeks." ECF No. 61 at 2. Defendants did not file an opposition. Finding good cause, the Court **GRANTS** Plaintiff's application to file a late opposition. *See* Fed. R. Civ. P. 6(b)(1)(B) (The Court "may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect.")

1 briefing on Defendants' sham affidavit arguments. ECF No. 63. On April 18, 2022, Plaintiff
2 summitted supplemental briefing. ECF No. 64. On April 25, 2022, Defendants filed a reply to
3 Plaintiff's supplemental briefing. ECF No. 65.

4 In her Opposition to Defendants' Motion for Summary Judgment, Plaintiff stated "[a]t this
5 time Plaintiff is Dismissing her claims for: Judicial Deception leading to Unlawful Entry, Judicial
6 Deception leading to illegal search, and excessive force." ECF No. 59. at 8. Plaintiff did not
7 address any of Defendants' arguments regarding her judicial deception leading to unlawful entry,
8 judicial deception leading to illegal search, and excessive force claims. Accordingly, the Court
9 **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's first claim for judicial
10 deception leading to unlawful entry, second claim for excessive force, and fourth claim for judicial
11 deception leading to illegal search against Defendants Contra Costa County and Detective
12 Amanda Sears.

13 The Court proceeds to evaluate Plaintiff's third claim for unlawful detention on summary
14 judgment.

### III.   LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To carry this burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion.

1  FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The mere
2  existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the
3  jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
4  242, 252 (1986).

5      The Court must view the evidence in the light most favorable to the nonmoving party and
6  draw all justifiable inferences in its favor. *Id*. at 255. "Credibility determinations, the weighing of
7  the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those
8  of a judge." *Id*. However, it is not the Court's task to scour the record in search of a genuine issue
9  of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the
10 nonmoving party to identify with reasonable particularity the evidence that precludes summary
11 judgment." *Id.* Thus, the Court "need not examine the entire file for evidence establishing a
12 genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate
13 references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d
14 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party
15 is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations
16 omitted).

## IV. DISCUSSION

### A. Sham Affidavit

As a preliminary matter, Defendants allege Plaintiff's Opposition Affidavit is a sham and should be stricken because the affidavit's statements contradict Plaintiff's deposition testimony. ECF No. 62 at 2-6; ECF No. 65. Defendants argue the following statements are evidence a sham:

1) "Upon entering my home, all the Defendants kept their firearms trained on me for several minutes."

2) "none of the defendants ever produced a copy of the warrant but remained in the home."

3) "I learned that the Defendants were at my home looking for a gentleman named Josephus Goodwin who the [sic] I knew, but who never resided at my home or had any indicia connected to my home address."

4) "[Plaintiff was] detained and not free to leave for two and half hours while the

1   Defendants searched through my home. During this two and half hour period, I repeatedly

2   requested to be able to use my cell phone, in which I was told by Amanda Sears that I could not."

3        5) "During the two and half period that I was forced to sit down and not use my cell phone,

4   I was repeatedly interrogated by a female officer at the behest of Amanda Sears, about Josephus

5   Goodwin and my son Mario Williams."

6        6) "[Plaintiff wore] scantily clothed nightgown"

7        7) Plaintiff spelling of her son's name.

ECF No. 62 at 2-6.  Plaintiff argues her Opposition Affidavit is not a sham.  ECF No. 64.

     "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  This "sham affidavit" rule is necessary to protect the idea that "'[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.'" *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Celotex*, 477 U.S. at 327) (edits in *Vans Asdale*).  "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy*, 952 F.2d at 266 (internal quotation marks and edits omitted).

     At the same time, the Ninth Circuit "recognize[s] that the sham affidavit rule is in tension with the principle that a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence." *Van Asdale*, 577 F.3d at 998. "Aggressive invocation of the rule also threatens to ensnare parties who may have simply been confused during their deposition testimony and may encourage gamesmanship by opposing attorneys." *Id.*  Thus, the Ninth Circuit instructs courts to apply the rule "with caution" and imposes "two important limitations on a district court's discretion to invoke the sham affidavit rule." *Id.*  First, "the district court must make a factual determination that the contradiction [is] actually a 'sham.'" *Kennedy*, 952 F.2d at 267.  Second, the "inconsistency between a party's

7

1  deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking

2  the affidavit." *Van Asdale*, 577 F.3d at 998–99.

3        Applying these standards here, the Court declines to strike the entirety of Plaintiff's

4  Opposition Affidavit as a sham.  While Defendants point to some small deviations, except as

5  discussed below, between Plaintiff's deposition and her Opposition Affidavit, those deviations are

6  not "clear and unambiguous" contradictions justifying striking the entire affidavit.[7] *See Asdale v.*

7  *Int'l Game Tech.*, 577 F.3d at 989, 998-99 (9th Cir. 2009) ("[O]ur cases have emphasized that the

8  inconsistency between a party's deposition testimony and subsequent affidavit must be clear and

9  unambiguous to justify striking the affidavit."); *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231

10  (9th Cir.1995) ("the non-moving party is not precluded from elaborating upon, explaining or

---

[7] For example, the affidavit statement, "[u]pon entering my home, all the Defendants kept their firearms trained on me for several minutes" does not clearly and unambiguously contradict Plaintiff's deposition because Plaintiff had testified that, shortly after the officers entered her house, they stopped pointing their weapons at Plaintiff.  ECF No. 55-2 (Anderson Depo.) at 66:6-13 (emphasis added).

    The affidavit statement "none of the defendants ever produced a copy of the warrant but remained in the home" does not clearly and unambiguously contradict Plaintiff's deposition testimony.  Although Plaintiff admitted to seeing a copy of the search warrant on Defendant Sears's phone, P's SUR ¶ 20, Plaintiff testified at her deposition that she did not receive a copy of the warrant.  ECF No. 55-2 (Anderson Depo.) at 27:15-17.

    The affidavit statement, "I learned that the Defendants were at my home looking for a gentleman named Josephus Goodwin who the [sic] I knew, but who never resided at my home" does not clearly and unambiguously contradict Plaintiff's testimony that Goodwin had "stayed over" at her house three times in 2019.  Plaintiff testified that she told the officers Goodwin "does not live" in Plaintiff's residence.  ECF No. 55-2 (Anderson Depo.) at 25:17-23.

    The affidavit statement, "[Plaintiff was] detained and not free to leave for two and half hours while the Defendants searched through my home. During this two and half hour period, I repeatedly requested to be able to use my cell phone, in which I was told by Amanda Sears that I could not" does not clearly and unambiguously contradict Plaintiff's deposition testimony.  Plaintiff testified she asked for her cell phone at least twice and was denied permission.  ECF No. 55-2 (Anderson Depo.) at 26:7-9 (request and denial of phone before moving to living room); 32:21-24 (request and denial of phone while in the living room)

    The affidavit statement, "During the two and half period that I was forced to sit down and not use my cell phone, I was repeatedly interrogated by a female officer at the behest of Amanda Sears, about Josephus Goodwin and my son Mario Williams" does not clearly and unambiguously contradict Plaintiff's deposition testimony.  Plaintiff submitted a declaration explaining that the statement explained her feelings during the questioning, that she felt "uncomfortable and like she was being interrogated." *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806–07 (1999) (stating the general rule that parties may explain or attempt to resolve contradictions with an explanation that is sufficiently reasonable).

    Finally, the affidavit statement that "[Plaintiff wore] scantily clothed nightgown" does not clearly and unambiguously contradict her deposition testimony.  Plaintiff testified that, during the search, she wore "pajamas . . . that was short" and she "had a short like gown that [she] sle[pt] with on." ECF No. 55-2 (Anderson Depo.) at 32:17-22.

8

1  clarifying prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies
2  that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for
3  excluding an opposition affidavit."); *Cleveland v. Groceryworks.com, LLC*, 200 F.Supp.3d 924,
4  942-43 (N.D. Cal. Aug. 4, 2016) (declining to strike entire affidavit based on small deviations
5  from deposition testimony).

6  However, the Court finds Plaintiff's statement that Goodwin did not have "any indicia
7  connected to [Plaintiff's] home address" contradicts her deposition testimony.  In her deposition,
8  Plaintiff stated that Goodwin "probably stayed over [at Plaintiff's house] maybe three times."
9  ECF No. 55-2, Exh. A (Anderson Depo.) at 39:17-18.  The Court finds Goodwin's having "stayed
10 over" at Plaintiff's home clearly and unambiguously contradicts Plaintiff's affidavit statement that
11 Goodwin does not have "any indicia connected to [Plaintiff's home address]."  Accordingly, the
12 Court will strike Plaintiff's affidavit to the extent she claims Goodwin had no indicia connected to
13 Plaintiff's home.  *See Ward v. City of Siskiyou*, 816 Fed.Appx. 51, 54 (9th Cir. 2020) ("The
14 district court's ruling that portions of Ward's declaration must be stricken under the sham affidavit
15 rule was not an abuse of discretion because there were unambiguous inconsistencies between
16 Ward's deposition testimony and his declaration.")

### B.    Unreasonable Detention Claim

Defendants argue Plaintiff's detention was reasonable and incidental to a valid search warrant.  ECF No. 55 at 13.  Plaintiff argues the detention was unreasonable because Plaintiff was not free to leave, repeatedly denied access to her phone, dressed in a night gown and not allowed to get additional clothes, and questioned about Goodwin and her son during the search.  ECF No. 59 at 4-5.

"For Fourth Amendment purposes, a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981).  "[A]n officer's authority to detain incident to a search is categorical [and] does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Muehler v. Mena*, 544 U.S. 93, 98 (citing *Summers*, 42 U.S. at 705 n.19).  Therefore, "the duration of a

detention may be coextensive with the period of a search, and require no further justification." *Dawson v. Seattle*, 435 F.3d 1054, 1066 (9th Cir. 2006). "[P]olice do not, however, have unfettered authority to detain a building's occupants in any way they see fit" and "the detention must be conducted in a reasonable manner." *Tekle v. United States*, 511 F.3d 839, 848-89 (9th Cir. 2007). Whether a detention was "carried out in in an unreasonable manner is determined under an objective test, on the basis of the facts and circumstances confronting the officers" and relevant circumstances "must be assessed in their totality." *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir.1994).

The following facts are undisputed. Defendant Sears and the officers searched Plaintiff's residence pursuant to a search warrant.[8] P's SUR. ¶ 12. The search warrant authorized the search of Plaintiff's residence and permitted the search for Joseaphus Goodwin, vehicles registered or rented to Goodwin, firearms, ammunition, gun magazines, gang indicia, cell phones belonging to Goodwin, indicia of occupancy, safes or locked containers not easily opened, and a men's diamond bracelet. ECF No. 57-1 (Search Warrant) at 3-4. Goodwin was a known gang member and the officers were investigating a violent crime involving multiple codefendants. P's SUR. ¶¶ 5-6. Given Goodwin's history of firearm possession, gang membership, and suspected robbery, Defendant Sears had the search warrant effected at night to mitigate the danger to officers and the public. P's SUR ¶ 7. Defendant Sears was also concerned that other co-defendants could have been at Plaintiff's residence during the search. P's SUR ¶ 13. The search began at approximately 5:00 a.m. and ended at 7:45 a.m. P's SUR ¶¶ 12, 26. Plaintiff was detained in her living room, without handcuffs, and no firearm was pointed at Plaintiff during the search. P's SUR ¶¶ 22, 26;

---

[8] Plaintiff's Opposition does not argue the search warrant lacked probable cause or was otherwise invalid. The Court finds there is no genuine issue of material fact regarding the validity of the search warrant and will evaluate Plaintiff's unreasonable detention claim. *See* United States v. Artis, 919 F.3d 1123 (9th Cir. 2019) ("To establish a Fourth Amendment violation, then, the defendants must succeed in showing either that the warrants were invalid under the Fourth Amendment or that, even if valid, the warrants were executed in a manner that rendered the searches unreasonable."); *cf. Dayton v. City of Fairfield*, 787 Fed.Appx. 454 (9th Cir. 2019) ("The district court properly dismissed Dayton's unlawful search and seizure claim under the Fourth Amendment because Dayton failed to allege facts sufficient to show a lack of probable cause for the warrant.")

ECF No. 55-2, Exh. A (Anderson Depo.) at 32:19-24.  Officers denied Plaintiff's request to "get something" as Plaintiff was wearing short pajamas or a "short like gown."  ECF No. 55-2, Exh. A (Anderson Depo.) at 32:19-24.  The officers denied Plaintiff's requests to get her phone.  ECF No. 55-2, Exh. A (Anderson Depo.) at 26:7-9; 32:21-24.  However, Plaintiff was able to call her boss and leave right after the call. ECF No. 55-2, Exh. A (Anderson Depo.) at 38:6-7.  During the search, Defendant Sears and Officer Decker asked Plaintiff questions about her son, where Plaintiff graduated from, where Plaintiff's son graduated from, how long Plaintiff knew Goodwin, how many times a week Goodwin came to Plaintiff's home, how long Plaintiff resided in her home, where Plaintiff works, and what time Plaintiff had to go to work.  ECF No. 55-2, Exh. A (Anderson Depo.) at 31:15-22; 35:8-15; 39:9-15.  Defendant Sears was actively investigating a case involving Plaintiff's son.  ECF No. 55-2, Exh. A (Anderson Depo.) at 31:21-22.

Plaintiff argues the record demonstrates a genuine dispute of material fact as to whether Plaintiff voluntarily consented to questioning and whether Plaintiff was held "incommunicado" during the detention.  ECF No. 59 at 5-6.  Notably, however, Plaintiff fails to identify any "specific facts showing that there is a genuine issue for trial" regarding the nature of Plaintiff's questioning or Plaintiff being held incommunicado.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp*., 594 F.2d 730, 738 (9th Cir. 1979) (finding conclusory and speculative testimony in affidavits and moving papers insufficient to raise genuine issues of fact and defeat summary judgment).  There is no evidence in the record that the officers used physical force or a threat of detention to submit Plaintiff to questioning.  *Compare with Ganwich v. Knapp*, 319 F.3d 1115, 1121 (9th Cir. 2003) (finding forced interrogation during *Summer*-type detention unreasonable where "the officers told the plaintiffs, who already had been detained for more than an hour, that they would not be released until they submitted to individual interrogations . . . [and] brought each plaintiff to a back room, where officers interrogated [them].").  Moreover, the record demonstrates that Plaintiff told officers she had to be at work by 9 a.m., was allowed to call her boss, and left shortly thereafter.  ECF No. 55-2 (Anderson Decl.), Exh. A at 38:2-7.

Accordingly, viewing the facts most favorable to the Plaintiff and drawing all justifiable

11

inferences in her favor, the Court finds Plaintiff's detention was reasonable under the Fourth Amendment. Given Goodwin's history of firearm possession and gang membership, the ongoing criminal investigation of multiple defendants, and the search warrant's authorization to search for phones and other evidence related to Goodwin, the officers had legitimate interests in preventing efforts to conceal or destroy evidence and minimizing risk of harm to themselves and the public. *See Muehler v. Mena*, 544 U.S. 93, 93 (2005) ("Because a warrant existed to search the premises and Mena was an occupant of the premises at the time of the search, her detention for the duration of the search was reasonable under *Summers*. Inherent in *Summers*' authorization to detain is the authority to use reasonable force to effectuate the detention."); *Dawson*, 435 F.3d at 1066 ("[D]etaining a building's occupants serves at least three law enforcement interests: first, detention prevents a suspect from fleeing before the police discover contraband; second, detention minimizes the risk that an officer or an occupant might be harmed during the search; and third, detention often expedites a search."). Similarly, the officers' denial of Plaintiffs' requests to get her phone during the search was "carefully tailored to its underlying justification." *Ganwich*, 319 F.3d at 1123. The officers were investigating a crime with multiple codefendants who were known to communicate over the phone, the search warrant listed phones as authorized items of the search, and the record demonstrates that Plaintiff was able to call her boss after she told officers she had to go to work.

Moreover, the Court finds the questioning by Defendants Sears and Officer Decker to be reasonable. *See Florida v. Bostick*, 501 U.S. 429, 429 (1991) ("Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions . . . provided they do not convey a message that compliance with their requests is required."). Accepting Plaintiff's assertion that the questions made her "feel uncomfortable and like [she] was being interrogated," Plaintiff still fails to identify any facts regarding the manner of questioning or showing that the officers used a "threat of continued detention to coerce [her] to submit to interrogations." *See Ganwich*, 319 F.3d at 1121. Nothing in the record suggests that the officers expressly conditioned Plaintiff's release from detention on her willingness to submit to an interrogation or that the search was prolonged because of the questioning. *See Curiel v. County of*

1    *Contra Costa*, 362 Fed.Appx. 824, 831 (9th Cir. 2010) ("The district court found Fred and Hazel
2    agreed to talk and their release was not explicitly conditioned on their cooperation. These findings
3    are not clearly erroneous. The consensual questioning was permissible and did not prolong the
4    detention").  Moreover, the questioning related to the officers' justification of protecting
5    themselves and the public from harm—the officers were actively investigating a crime with
6    multiple codefendants. *See Dawson*, 435 F.3d at 1069 (upholding grant of summary judgment
7    where record suggested officers did not condition a plaintiff's release on an interrogation and
8    police's questions related to their justification for detention).

       Finally, Plaintiff asserts that the detention was unreasonable because she was wearing short pajamas or a short gown and was not allowed to get additional clothes. ECF No. 59 at 5-6. Plaintiff argues her case is similar to *Franklin*, where officers "executed the warrant in an unreasonable manner, first by removing a gravely ill and semi-naked man from his sickbed without providing any clothing or covering, and then by forcing him to remain sitting handcuffed in his living room for two hours rather than returning him to his bed within a reasonable time after the search of his room was completed." *Franklin v. Foxworth*, 31 F.3d 873, 875 (9th Cir. 1994). However, the Ninth Circuit's finding of unreasonableness in *Franklin* was conditioned on the officers being aware of the plaintiff's disability. *Id*. at 877.  The Ninth Circuit explained that "[d]etentions, particularly lengthy detentions, of the elderly, or of children, or of individuals suffering from a serious illness or disability raise additional concerns" under the Fourth Amendment. *Id*. at 876.  In contrast, here, the record does not indicate, and Plaintiff fails to identify, circumstances demonstrating the officers were aware of a disabled Plaintiff having a susceptibility to the cold, or any other condition that would warrant additional concerns under the Fourth Amendment.  *See Woods v. City of Hayward*, Case No. 19-cv-1350-JCS, 2021 WL 4061657, at *2, 7, 11 (N.D. Cal. Sept. 7, 2021) (granting summary judgment of Fourth Amendment unreasonable detention claim where a plaintiff wearing a "light nightshirt and pants he wore to bed" was taken outside and not permitted to get warmer clothes because no evidence that officers knew of plaintiff's particular disabilities and susceptibility to the cold).

       Accordingly, viewing the facts in light most favorable to Plaintiff, the Court **GRANTS**

Defendants' Motion for Summary Judgment of Plaintiff's unreasonable detention claim against the County[9] and Defendant Sears. [10]

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's first claim for judicial deception leading to unlawful entry, second claim for excessive force, third claim for unreasonable detention, and fourth claim for judicial deception leading to illegal search against Defendants Contra Costa County and Detective Amanda Sears.

**IT IS SO ORDERED.**

Dated: May 12, 2022

THOMAS S. HIXSON
United States Magistrate Judge

---

[9] Plaintiff makes no argument defending her claims of municipal liability against the County. Indeed, Plaintiff fails to identify any policy, custom, or ratification to support a theory of municipality liability.

[10] Defendants also argue supervisory liability does not apply to Defendant Sears. ECF No. 55 at 13-14.  Given the Court has found Plaintiff's detention was not unreasonable, the Court declines to address this argument.  Similarly, the Court need not address Plaintiff's argument on qualified immunity. ECF No. 59 at 6-8.  Defendants do not raise a qualified immunity argument in their Motion for Summary Judgment.

14